UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 08-24-GWU

DEBRA JOHNSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

>   Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-24  Debra Johnson

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to

08-24 Debra Johnson

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

5

08-24  Debra Johnson

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debra Johnson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of hallux rigidus or flexion deformity of the toes and osteoarthritis of the knees. (Tr. 13). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to perform a full range of "sedentary" level exertion, and was capable of performing her past relevant work as a telephone operator, sales coordinator, and data entry operator, and therefore was not entitled to benefits. (Tr. 14-20). The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to having no cartilage in her toes, arthritis in both of her knees, and depression, and asserted that she had constant pain in her feet and legs and could hardly stand for any length of time. (Tr.104). At the administrative hearing, she asserted that she could only stand for "a minute or two," had to hold on to something for balance, and could walk only about 50 feet before having to sit down. (Tr. 50). She alleged that she had fallen three times in the past year. (Id.). Mrs. Johnson stated that her doctor had instructed her to use a cane

08-24 Debra Johnson

but she was "very vain" and tried not to use it. (Tr. 53-4). In her home, she knew where she was and knew where to hold on to things when walking. (Tr. 54). She also alleged being limited in her sitting to one or two hours a day, asserted that she had to lie down several times a day for short periods, and would prop her feet up most of the time when sitting. (Tr. 49, 52-3). She related her standing problem to both foot pain and knee pain and also alleged having pain in her hands which had apparently developed more recently. (Tr. 41-2).

Two examining sources offered opinions regarding Mrs. Johnson's functional capacity.

One of the sources was a consultative examiner, Dr. Jules Barefoot, who evaluated the plaintiff on August 3, 2006 and noted markedly diminished movement in the toes of both feet, and stated that the plaintiff expressed significant pain with attempts to flex or extend the toes of either foot. (Tr. 250). She had an abnormal gait, was able to squat only "poorly," and was unable to walk on her toes and heels. (Id.). Despite this, Dr. Barefoot noted that Mrs. Johnson "was able to ambulate without the use of an assistive device." Dr. Barefoot did not prepare a specific functional capacity assessment but made the general observation that the plaintiff's ability to perform significantly strenuous work-related activity involving repetitive bending, squatting, crawling, and climbing did appear to be impaired. (Tr. 251).

08-24 Debra Johnson

The plaintiff was also extensively treated by her family physician, Dr. John W. Richard, who submitted office notes reflecting treatment for a variety of conditions, including osteoarthritis and foot pains. (Tr. 169-75, 275-287, 300-12, 336-69). Dr. Richard referred his patient to a podiatrist, Dr. Vivian Rodes, for pain in her great toes. Dr. Rodes noted that x-rays in June, 2004 had shown degenerative joint disease in the first metatarsal phalangeal joint (MPJ) on the right foot and examination showed pain and limited range of motion in both great toes, as well as mild crepitus in both knees, also with pain on range of motion. (Tr. 224). New x-rays showed bilateral narrowing of the first MPJ with dorsal exostosis in two locations. (Id.). The podiatrist diagnosed bilateral "hallux limitus/rigidus, arthralgia, right worse than left, and metatarsus primus elevatus," and provided three cortisone injections later in 2004 with temporary improvement. (Tr. 221-4).

Subsequently, in June, 2006, Dr. Richard referred his patient to Dr. Lisa DeGnore for the same problem. Dr. DeGnore found both great toes to be "a little enlarged" at the MPJs, tender, and with a reduced range of motion and pain at the extremes of motion. There was no abnormality in the knees. (Tr. 228-9). Dr. DeGnore also assessed hallux rigidus, stated that one possible procedure could not be considered "because [the plaintiff] really has no cartilage;" and if surgery was necessary she would do a fusion. (Tr. 229). She recommended using a "turf toe

08-24  Debra Johnson

insert" for six months in order to avoid surgery, and stated that she would consider surgery again after six months if the inserts did not help enough. (Id.).[1]

Neither of the consulting specialists gave an opinion regarding functional capacity.

An assessment dated August 31, 2006 was submitted, and identified by the state agency employee assembling the transcript as being from "Joan W. Russell." There are no other records from a source of this name in the transcript. The ALJ questioned the plaintiff about "Joan Russell" at the administrative hearing and both the plaintiff and her attorney unequivocally stated that the source was actually Dr. John W. Richard. (Id.). The ALJ appeared to accept this identification. (Id.). Dr. Richard's report states that he had treated the plaintiff for eight years, that she carried a diagnosis of hallux rigidus and bilateral knee osteoarthritis (Tr. 254), and that, in terms of functional restrictions she could lift and carry 20 pounds occasionally and 10 pounds frequently, sit a total of eight hours a day (more than two hours without interruption), stand and walk less than two hours (no more than ten minutes without interruption), and would need a cane or assistive device while engaging in occasional standing or walking (Tr. 255-7). She would be able to stoop

---

[1]The plaintiff testified at the administrative hearing that she did not have the fusion because she had been told the surgery might relieve 25 percent of the pain, but it would not be completely gone. (Tr. 44-5). She did not try the shoe inserts because she could not stand anything touching the top of her toes and always wore open-toed shoes. (Tr. 36).

08-24  Debra Johnson

ten percent of the time during an eight-hour day, and could not crouch.  (Tr. 257). She would not need a sit/stand option, would not need to elevate her legs while seated, and had no limitations on repetitive reaching, handling, or fingering.  (Tr. 256-7).

Despite the testimony regarding the source of this assessment, the ALJ identified the author in his decision as being "Joan W. Russell," and briefly stated that he accorded the opinion little weight because the findings were "contradictory to the records."  (Tr. 17-18).  There can be little doubt that the error was not harmless.

Viewed in context, there can be little doubt that the "Joan W. Russell" functional capacity assessment was by the treating source, Dr. John W. Richard. As a treating source, his opinion was entitled to greater deference than that of a non-treating source, because a treating source is "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone . . . ."  20 C.F.R. § 404.1527(d)(2).  Even if a treating physician's opinion is not sufficiently supported by medical evidence to be entitled to controlling weight, the ALJ must consider several factors listed in § 404.1527, including the length of the treatment relationship and the frequency of the examinations, the nature and extent of the treatment relationship, the supportability and consistency

08-24 Debra Johnson

of the opinion, and the specialization of the source. "[I]n all cases, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). In addition, the ALJ must articulate "good reasons" for discounting treating physicians' opinions, both to allow claimants to understand the disposition of their cases, and to permit meaningful appellate review. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Applying these standards to the present case, the ALJ's discussion of Dr. Richard's restrictions falls far short of the procedural requirements. The ALJ conceded, they provided "less than sedentary limitations on sitting, standing [and] walking and reported the claimant required support ambulating." (Tr. 18).[2] Thus, they are inconsistent with the ALJ's functional capacity finding. Merely to state, as the ALJ did, that Dr. Richard's assessment is "contradictory to the records" falls far

---

[2]The court is not necessarily convinced that Dr. Richard's sitting restriction is incompatible with sedentary level work, but it appears his standing/walking limitation might be. With regard to the need to use a cane or assistive device, Social Security Ruling (SSR) 96-9p notes that the effect on the sedentary occupational base will depend on the circumstances in which the device is needed, "i.e., whether all the time, periodically, or only in certain situations; distance or terrain; and any other relevant information." It may be useful to consult with a vocational expert. SSR 96-9p, p. 7. While Dr. Barefoot noted in his one-time examination that the plaintiff was "able" to walk without an assistive device, he did not actually find that she would never need to use one. The plaintiff herself was not asked about circumstances in which she felt she had to use her cane outside the home.

08-24 Debra Johnson

short of the requirements for discounting the opinion of a treating physician as required in § 404.1527 and in Wilson.

The decision will be remanded for further consideration.

This the 10th day of June, 2009.

Signed By:

*G. Wix Unthank*

United States Senior Judge